## Cooper, et al. v. Cooper, et al.

(Decided January 19, 1926.)

### Appeal from Graves Circuit Court.

1. Witnesses—Exceptions to Depositions Properly Sustained where they Related to Transactions with Deceased Person.—In partition suit, exceptions to depositions of plaintiffs were properly sustained in so far as they testified for themselves concerning transactions with or acts of deceased persons.

2. Adverse Possession—Estoppel—Grantors' Deed Showed Grantors' Possession to be Amicable—Deed Estopped Grantors or Heirs from Claiming Interest.—Where grantors' deed recited grantors made deed to grantee to whom land justly belonged because grantors never had interest therein, such deed, coupled with grantors' acceptance back of deed, granting life estate, showed grantors' possession of property to be amicable, and estopped them or any one claiming through them from claiming any title.

3. Deeds—Evidence Held to Show Party had Mental Capacity to Make Deed.—Evidence held to show party had mental capacity at time of execution to make deed.

J. E. WARREN for appellants.

ROBBINS & ROBBINS and JOE McCARROLL for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This suit was brought to partition a 130-acre tract of land in Graves county among the heirs of Thomas H. Cooper. Hattie A. Cooper and the children of John Cooper, who were made parties defendant, denied the title of plaintiffs and asserted title in themselves. On final hearing Hattie A. Cooper and her children were adjudged to be the owners of the land, and plaintiffs have appealed.

The deposition of Hattie A. Cooper in which she attempted to testify as to certain transactions with Thomas Cooper and John Cooper, who were dead at the time the evidence was given, was not read or considered by the court, and the exceptions to the depositions of plaintiffs, in so far as they testified for themselves concerning transactions with, or acts done by, persons then deceased were properly sustained.

Some confusion as to the title has resulted from the burning of the court house and records of Graves county. Giving effect to the evidence that was properly admitted it appears that in 1859 T. H. Cooper and J. O. Cooper, who were brothers, purchased by title bond from D. B.

Hail a tract of land in Graves county containing 230 acres, and that this land was conveyed to the purchasers in January, 1861. Some time later T. H. Cooper became involved on account of some security debts and lost all of his property. He then moved on the 130-acre tract of land, and in 1871 executed a deed to his brother conveying his portion of the land and reciting that the execution by Hail of the deed to him and J. O. Cooper jointly was a mistake, and that J. O. Cooper paid the consideration and the deed should have been made to him alone. After that both J. O. Cooper and T. H. Cooper were absent from Graves county for a while. On December 18, 1876, J. O. Cooper and Thomas H. Cooper signed the following writing:

"Hopkinsville, Ky., Dec. 18th, 1876.

"This is to certify that J. O. Cooper and Tho. H. Cooper has this day settled up their business in full to date from the year 1859 to 1876. Satisfactory to both parties, witness our hand this the 18th day of December, 1876."

About this time T. H. Cooper returned to Graves county and took possession of the 130-acre tract of land. From that time on, he and his wife continued to use and occupy the land as their own until the year 1911, when they conveyed the land to Hattie A. Cooper, widow of John Cooper, by deed containing the following:

"That in consideration that the records of the original deed to this farm, on which we now reside, which was recorded at Mayfield, Graves county, Kentucky, in deed book R, page 460, was destroyed by fire, and that we having lived on the farm for the past thirty-six years, free of rent, might give us a claim on the land. To prevent any misunderstanding in regard to it, we the parties of the first part make this deed to the party of the second part, to whom it justly belongs, as we have never owned any interest in this land."

On the same day, Hattie A. Cooper conveyed to Thomas H. Cooper and his wife a life estate in the land and provided in the deed that at the death of the grantees it was to revert back to Hattie A. Cooper and her legal heirs. After that Thomas H. Cooper and his wife continued to reside on the land until their death a few years later.

The record title being in J. O. Cooper, appellants must fail unless they have shown title by adverse possession. It may be conceded that unless the holding of Thomas H. Cooper and wife was amicable it was sufficiently exclusive and long continued to support title by adverse possession. In view of the conveyance by Thomas H. Cooper and J. O. Cooper in the year 1871, we do not regard the writing of 1876, coupled with the fact that Thomas H. Cooper took possession of the farm about that time, as being sufficient to show a purpose on the part of John Cooper to reinvest his brother with the ownership of the farm. However, whatever may have been the circumstances under which Thomas H. Cooper and wife took possession of the farm, it can not be doubted that the conveyance which they made to his brother's widow in the year 1911, coupled with their acceptance of the deed conveying to them a life estate in the property, was sufficient not only to show that their holding was amicable, but to estop them and those claiming through them from asserting title to the land, unless, as is claimed, Thomas H. Cooper was not of sound mind when the deed was made, or was the victim of fraud or undue influence on the part of Hattie A. Cooper. There is no evidence of fraud or undue influence. The circumstances would indicate that Hattie A. Cooper was desirous of making suitable provision for her husband's brother and his wife. The only competent evidence on the question of mental incapacity was that given by Dr. M. W. Page, who testified on direct examination that he had treated Thomas H. Cooper for paralysis and pneumonia; that when he got acquainted with the old man he was living in his second childhood, and mighty childish, and that he did not think he was capable of managing his affairs to his best interests, or capable of coping with the average business world. On cross-examination, however, the witness stated that he meant to say that Thomas H. Cooper, by reason of his age, did not have the mental vigor, and was not as able to cope with the strong business world, as he had formerly been, but that he was in no sense an insane man. When we construe this language in the light of the fact that Thomas H. Cooper was not coping with the business world, but was coping with his brother's widow, who was only a few years younger than he, and that his own wife, who was of average intelligence, united in the conveyance, we are constrained to the view that the evidence

was not sufficient to show mental incapacity at the time
of the execution of the deed.

It follows that the chancellor did not err in adjudg-
ing appellees to be the owners of the land in controversy.

Judgment affirmed.